MARSHALL CLARK *v.* BOSTON & MAINE RAILROAD.

*Lucier & Dowd* (by brief), for the plaintiff.

*Warren, Wilson, McLaughlin & Bingham* (*Mr. Bingham* orally), for the defendant.

ALLEN, C. J. I. By reason of the decision in the former transfer of the case, the retrial now considered was confined, in respect to liability, to the issue of the last clear chance.

The defendant asserts that the evidence furnishes no support for a finding that the chance existed. This depends upon the time available for "saving action" after the plaintiff came into the fireman's view. The fireman testified that this view was "As near as I can estimate, just coming off the crossing, that is, the cab of the engine

would be on the south edge of the Bridge Street crossing." The engineer's testimony was that the fireman's call to stop was given "South of the Bridge Street crossing, the cab, I think." If this evidence is accepted, the conclusion that due care would have brought the train to a stop before it reached the plaintiff is not conjectural, taking into account the factors of the distance from the crossing to the plaintiff, the train's speed, the time needed for applying the braking mechanism, and the distance in which the train would stop after the mechanism was applied.

But it is claimed that the fireman was in such a position in the cab of the engine that it was impossible for him to see the plaintiff as he testified and that the first view of the plaintiff came too late for warning and action to stop the train seasonably. The claim assumes that the fireman was in his seat at the back of the cab as he testified. If he was in some other position, a seasonable view of the plaintiff was possible. Conceding that the impossibility of seasonably seeing the plaintiff from the fireman's seat was demonstrated, it was not demonstrated that he was in that seat or in a position where a view of the plaintiff was shut off. His testimony about his position is not conclusive to show that he was mistaken as to the point where the plaintiff first came into his view. It may reasonably be inferred that he did not testify correctly as to his position. If in looking ahead he was near the front of the cab or if he had taken a forward position to the right of that he claimed to be in, his testimony upon the point where he first saw the plaintiff will bear acceptance.

On the premise that from the fireman's seat a seasonable view of the plaintiff was not to be had, the fireman's testimony is inconsistent. Either he was not sitting in the cab as he says he was, or he did not then see the plaintiff as he says he did. In other words, either he saw the plaintiff in time or he did not. This is a jury question. It is not necessarily to be found that he was seated in normal position in the cab. His estimate of the point where he first saw the plaintiff was in some measure a deliberate one, in revision of previous testimony less favorable to the defendant, and in accord with the engineer's recollection. No rule of law gives preference to his testimony of his position.

The train was fully stopped when the front of the engine was but a few feet beyond the point where the plaintiff was struck. By the defendant's computation on the basis of its premises a stop short of this point was impossible. But if the fireman first saw the plaintiff when the distance from him was no more than ten feet greater

than the defendant concedes may be found, a seasonable stop was possible.

The front of the engine was 192 feet from the plaintiff as the cab passed over the south end of the Bridge street crossing. If the train's speed was 16 miles an hour, 2 seconds for warning and action would give a traveled distance of about 48 feet, leaving 144 feet after the brakes were applied. Accepting the testimony that about 100 feet would be traveled until the train came to a stop, a margin of safety of about 44 feet is shown. As the train's speed steadily decreased, the margin of safety in time would be over 2 seconds.

That the plaintiff was seen in time, is a sustainable finding. He was entitled to have his case go to the jury.

II. An expert was permitted to testify in what distance the train traveling ten to twelve miles an hour might be stopped. At the former trial a witness testified to such a rate. But as he was available as a witness at the retrial, the testimony was not then admissible as substantive evidence. Wigmore, Ev., (2d ed.), s. 1415. As the only evidence at the retrial was of a speed of at least sixteen miles an hour, it was prejudicial error to admit the expert's opinion. *Palmer* v. *Edgerly, ante,* 391.

The defendant's request for an instruction that lower speed could not be found, should have been granted. It was a "particularly applicable" *datum* in passing on the existence of the last chance. *McCarthy* v. *Souther,* 83 N. H. 29, 35.

The charge seemingly authorized the affirmative or substantive use of the testimony of the former trial as evidence of its truth. In any event it did not restrict its use to discredit the testimony of witnesses at the retrial. The defendant's request entitled it to such a direction.

III. The jury were instructed that on the issue of the last chance the burden to show the plaintiff's contributory negligence rested upon the defendant. This was error. The statute (P. L., c. 328, s. 13) provides that in negligence actions the plaintiff's negligence "shall be a defence," the burden of proving which shall be upon the defendant. It accomplishes a substantial change in increasing common-law liability by dispensing with the plaintiff's freedom from fault as an element of his cause of action. He need not establish his due care but the defendant may bar and defeat his cause by showing his lack of it. *Precourt* v. *Driscoll,* 85 N. H. 280, 286-288. The defendant's negligence imposes liability although it is as probable as not that the plaintiff also is in fault.

The plaintiff's fault being established, liability is defeated unless the last clear chance doctrine may be invoked. The doctrine creates a common-law exception to the general definition of legal cause. "It qualifies the general rule that a negligent plaintiff cannot recover." *Tetreault* v. *Gould*, 83 N. H. 99, 101, 102. It prescribes that under certain conditions the plaintiff's fault shall not be a defence. The fault remains causal within the law's definition of causation. The view taken or suggested in some cases (*Batchelder* v. *Railroad*, 72 N. H. 528, 530; *Hanson* v. *Railway*, 73 N. H. 395, 398) that the fault ceases to be proximate or that the defendant's fault partakes of wanton or intentional wrong was questioned in *Cavanaugh* v. *Railroad*, 76 N. H. 68, 72, where it is said: "It may be that neither explanation is strictly logical, and that the real foundation for the rule is merely its fundamental justice and reasonableness." This ground was adopted in *Olson* v. *Fox*, 79 N. H. 332, 334, and is to be sustained as inherently sound. The law's sense of justice permits recovery in spite of the plaintiff's fault if the defendant's superior knowledge is found. *Jones* v. *Railroad*, 83 N. H. 73, 81; *Stocker* v. *Railroad*, 83 N. H. 401, 403; *Webster* v. *Seavey*, 83 N. H. 60, 62. If it is found, the fault in the incurrence of the danger and in remaining in it do not free the defendant from liability.

A third person is not affected by the last chance rule, and in cases of injury caused by the negligence of two or more persons acting separately, liability to a third person is not confined to the wrongdoer who had the last chance, *Tetreault* v. *Gould*, *supra*, 101, 102; *Fontaine* v. *Charas*, *ante*, 424.

Heedless inattention to danger is negligence as matter of law. *Robinson* v. *Railroad*, 85 N. H. 474, and cases cited. Its causative force is not destroyed merely because of the existence of conditions making the last chance rule applicable.

It follows that in last chance cases the plaintiff's fault is continuing and concurrent with that of the defendant. It contributes to the injury under the test of legal cause. Fault in incurring danger is the commencement of the fault of not acting to avoid it after its incurrence. To remain in a position of danger carelessly entered is a continuance of the careless entrance. Entrance into danger and failure to escape it constitute one transaction, in the absence of special conduct of negligence aside from remaining in it.

As stated in the previous transfer of the case, the conditions of the defendant's superior knowledge are (1) that the defendant is aware of the plaintiff's presence, (2) that he is also aware of the plaintiff's

ignorance of his peril or of his inability to save himself, and (3) that the defendant may then in due care act to avoid injury. A finding that the plaintiff was ignorant of his peril does not indicate his care. He was careless because ignorant of it. While it was safe enough to stand between the rails of the track when there was no danger of being struck by a train, he was at fault in remaining there when there was such danger, since any heed to his situation would have informed him of it, and in time to save himself. Neither ignorance of the approaching train nor unawareness of his position between the rails turned careless into careful conduct. His inattentiveness to his peril and his failure to take any precaution for his safety constituted his negligence.

It was not stepping between the rails but stopping and staying there with no heed to the danger therein, that displays his lack of care. The theory of the trial court that such fault had not been judicially established but only the fault of entering a position which became dangerous to remain in, disregarded the realities of the situation. If there may be cases of separate, new and independent conduct of negligence in a dangerous situation carelessly entered, this is not one of them.

But although careless in not realizing the danger of his position and in not being watchful, the plaintiff's conduct, not changed in character by the service of the last chance rule, is yet excused by it.

The rule takes away the defence of contributory negligence, in special situations. Unless such a situation appears, it may not be relied upon, and it is for the plaintiff to establish it as to each of the conditions upon which it rests. His negligence being proved, the issue is whether it is to be excused. He must show affirmatively that the defence of his fault is not available. He depends upon a special rule freeing him from the application of the general rule. He must prove his right to its benefit.

For one thing, he must show his ignorance of his peril or his inability to meet it, and the defendant's appreciation thereof. The evidence that he is not thus ignorant or unable is not upon an affirmative defence, but is of strict rebuttal. Evidence that the plaintiff was aware of his peril and in due care might have saved himself relates to his negligence, it is true, but in defeat of his claim of right to the benefit of the last chance rule. As bearing on that rule, the evidence goes only to show that an element of the cause of action is not made out. The defendant may present any relevant evidence upon that element. Whatever tends to prove that the defence of contributory

negligence already established should not be taken away from him is admissible, but the burden is on the plaintiff to show that the defence should be taken away. The defendant's evidence tends to meet that of the plaintiff upon an issue material to the plaintiff's case, and is not in proof of an issue which is not a part of it. It refutes the plaintiff's claim, and does not assert an affirmative defence. It is not to make out the defence of contributory negligence, but to meet the claim of disentitlement to the defence. Evidence of it may be offered, not to show its already proved existence but in denial of the plaintiff's ignorance of his danger and opportunity to escape it. With this the statute is not concerned. The statute does not abolish or affect the last chance rule.

Cases where the plaintiff's fault has not been established, are governed by the statute in its proof. The last chance rule presupposes such fault, and is not to be invoked unless the fault is first found. Here, the fault existed as matter of law, and it was therefore not in issue in the retrial. But in all cases, the fault being found, the burden is on the plaintiff to show that the last chance rule avoids it as a defence.

The requests for instructions concerning the plaintiff's care while between the rails were properly denied. His negligence in standing there was not in question. Whether he was in fact aware of the train's approach and of his perilous position, were the only issues to be considered in connection with his care.

IV. A request for an instruction that the care of the fireman and engineer was to be considered in the light of the emergency encountered, should have been granted. *Carney* v. *Railway*, 72 N. H. 364, 372.

V. An instruction that "Estimates of distance and speed and of the distance within which it is possible to stop the train are largely speculative, may be, and often are, unreliable" (*Johnson* v. *Director-General*, 81 N. H. 289, 291, 292), was properly denied. The evidence upon these matters having been admitted, and without objection, it was for the jury to pass upon its worth, without requiring critical comment from the court. By its admission its character as speculative was denied. And that estimates are usually unreliable and inaccurate as compared with measurements, is matter of common knowledge, as to which instructions are not compelled.

*New trial.*

All concurred.